## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA**         :

           **v.**                  :         **CRIMINAL NO.   21-65**

**JOHN DOUGHERTY**                 :
**GREGORY FIOCCA**

## O R D E R

AND NOW, this       day of          , 2022, upon consideration of the Motion of

Defendant John Dougherty to Compel Information Related to the Government's Use of a

Confidential Informant, the Government's Response, it is hereby **ORDERED** that the motion is

**DENIED**.

                      **BY THE COURT:**


                      _____
                      **HONORABLE JEFFREY L. SCHMEHL**
                      **United States District Court Judge**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO.   21-65** |
| **JOHN DOUGHERTY** | : | |
| **GREGORY FIOCCA** | | |

**GOVERNMENT'S RESPONSE TO THE DEFENDANT'S MOTION TO COMPEL INFORMATION RELATED TO THE GOVERNMENT'S USE OF A CONFIDENTIAL INFORMANT**

The United States of America, by and through its attorneys, Jacqueline C. Romero, United States Attorney, and the undersigned attorneys, hereby responds to the defendant John Dougherty's Motion to Compel.

The defendant requests the Court to compel the government to produce the Source Reports pertaining to its use of a Confidential Informant in an investigation that commenced in 2020, as well as the audio recordings of meetings made by the CI.  For the reasons set forth below, the motion should be denied.

**I.      The Defendant's Motion is Based on False Premises.**

The defendant's motion begins with two false claims and is based on the false premise that the defendant's Sixth Amendment rights were violated.

**False statement #1** - "Mr. Dougherty is set to face trial on July 11, 2022, on an indictment that was obtained in whole or in large part based upon evidence provided by an only recently revealed Confidential Informant."  This is false.  The August 24, 2020, recording, to which he is referring, is not mentioned in the Indictment, and will be presented as a false exculpatory statement by the defendant to union employees in which he falsely attempts to minimize the assault committed by his nephew, defendant Gregory Fiocca.

1

**False statement #2** - "By engaging a Confidential Informant to record Mr. Dougherty after the March 2021 Indictment (the "Second Indictment"), the Government became privy to Mr. Dougherty's defense strategy with regard to this case." This is false. The defense, after receiving transcripts of more than 30 hours of Dougherty's statements, has failed to point to single statement made by the defendant that could legitimately be described as "defense strategy."

Finding no actionable statements in the materials provided to date, few of which could even be arguably described as Rule 16 discovery, or *Brady, Giglio,* or *Jencks* material, the defendant's motion is simply a compilation of reckless allegations, none of which have any basis in law or fact. It is, in essence, an attempt to postpone the trial of the extortion case and should be rejected.

## II.     The Court Can Determine Whether the Defense is Entitled to Any of the Source Reports.

The defense demands the production of the Source Reports, which were provided to the Court at the end of April. Although the defense does not have these materials, which would reveal the identity of the CI, it has transcripts of the recordings made by the CI, which are far more voluminous. The government is confident that the Court can ably determine whether any of the Source Reports are discoverable under Rule 16 of the Federal Rules of Criminal Procedure, or constitute *Brady, Giglio*, or *Jencks* materials, and can place its findings on the record.

## III.     Disclosing the Source Reports Would Place the CI in Danger.

Unlike the transcripts that have been disclosed, the government believes that the nature of the disclosures set forth in the Source Reports would allow the defendant to identify the Confidential Informant. Especially considering the attempts the defendant made on many of

- 2 -

the recordings to threaten and intimidate members of his own union who had the audacity to speak to the government or simply not take his side, the danger of revealing the identity of the informant is all too real.

The second investigation was initiated in 2020, after reports of intimidation of witnesses who will likely testify in the embezzlement trial.  The CI approached the FBI after this second investigation had been opened.  The CI said that threats were made by Dougherty at union meetings directed at those who were not loyal to him, as well as Local 98 employees and members who spoke to the FBI and will likely testify in the upcoming embezzlement trial. These threats were corroborated by the recordings.

For example, during the meeting of November 2, 2019, ten months after the 2019 Indictment was returned, Dougherty made the following statements about people who were talking to the government:

> And for the one person or whoever, is a f***ing p***y in the room who continues to sit here and eat at this table, and f**k us by putting out little information, I'm getting close to you baby I'm getting close to you. You're never going to see it coming.  I'm this close to you.  Right now. . . Ok?  I'm this close.  You're never going to see it coming.  This ain't one or five of ya.  Ok?  You'll know it's happening when it happens.  Ok? And be nice to your family too.  You going to f*** around with that mouth I'm coming after everything you have, and everything you f***ing own.  Lawyers, everything.  I've picked up mail at f***ing State Rep. offices, City Council office, I picked up mail outside some of your houses. Ok I'm this f***ing close.  Ok?  And I want you to run to the IO [IBEW International].  I want you to run to the Feds.  I want you to go there.  Because everything I'm going to do is by the book.  But at the end of the day, none of you when you find out, you won't be living in this area, ok?
>
> You guys understand?  What you're supposed to do?  You understand that right?  Okay?  If you got, listen, if you're so far in, on something that you've got to sit here and rat or make up, you should just take the easy way just go right to the bridge and jump and free fall.  I'll give you a gift (UI) in my car.  I'll have somebody pick up the truck later. Go right to the bridge.  If you can't pay your bills, or you got caught

doing something, or you got leverage, or you got caught stealing something, or you know, screwing your friend.  You know you got caught after a referral, or you got caught saying you were a business agent and shaking somebody down or moving juice or taking juice or DUI or hitting somebody, why would you want to go through life with what I'm going to do?  I'm going to make sure everybody everywhere, everybody at your kids' school everywhere knows that you're a punk and a rat and a creep.  Ok?  So why don't you just take a second, and do yourself a fav…do your kids, your wives your kids don't want to grow up knowing your daddy's a rat, daddy's a punk.  Go right to the bridge.  Jump right off the bridge.  Make it easy.  Make it easy.

During a July 14, 2020, meeting, Dougherty told the audience that:

 . . . I know things that you'll never know.  I have seven hundred thousand pieces of discovery.  I've got a computer full of phone conversations.  And I've got every interview.  I can tell you, every word, that everyone here said. When they were interviewed, on the phone, etc."

Dougherty also said he was close to finding out who was participating in a website that was critical of him, stating as follows:

Which I'm real close, and what I'm going to let you know is we're going to meet here, Friday at three o'clock here.  And we're going to meet here Friday at three o'clock, I'm going to give you a little time to think and a couple of yous, I need you to pull a [name of former employee] by then.  You come in, you put your resignation letter in my building, okay up in my office, on the door, leave your keys, leave the car, because I'm not going to give you [name of Local 98 member] name, but we know who bought the website.  Okay.  We know who's been participating.  We now have, somebody, like [Local 98 member], giving up everybody including the people that work for me.  . . .  And then I will, here's the problem.  I have to sue you.  Because I can't bring you up on charges with the way that they play the system, and I can't beat you up.  And you can say, oh, well, he can't beat me up anyway.  Yeah, I can.  Don't book it.  Don't play with that.  At this level, when you're playing with my family and my life, okay, I can.  And there's nobody here will get back up a second time.  The first time you get up the second time, I run you over.

On August 6, 2020, Dougherty stated as follows:

You guys understand how f\*\*\*ng pissed I am, I'm pissed because I got f\*\*\*ing guys telling me that our f\*\*\*ing guys are f\*\*\*ing, f\*\*\*ing other guys in the room . . . Okay.  I read, remember I read all the f\*\*\*ing, f\*\*\*ng paperwork.  I got all the paperwork.  I could tell you every

- 4 -

f***ing interview, everything everybody said about (UI).  I got it all.  In fact, I got a computer downstairs getting upgraded again to take with me so I can follow-up this weekend.  I can tell you what [person interviewed by the FBI] said for four and a half hours . . .

One of you guys gotta choke [a Local 98 member, whom Dougherty believed did not support him], put him under the f***ing water.  Okay.  Two of you, he's told me two people calling him, all the time.  ***king said look they tell me, the shit they tell me.  He'll never get a call from me.  Okay.  I carried his f***ing ass.

Furthermore, the people to whom Dougherty was speaking to at these meetings are Local 98 employees, whose employment and financial future were completely controlled by Dougherty.

### IV.   There is No Evidence that the Defendant's Sixth Amendment Rights Were Violated.

The defendant argues that "the government must disclose the requested information to determine the scope of its violation of [the defendant's] constitutional rights." This claim assumes, without proof, that the defendant has already established that his Sixth Amendment rights were violated.  His argument goes like this: Because the government has already violated my rights, the Source Reports will provide evidence of these violations. This puts the cart before the horse. The defendant even asserts that "the Government became privy to Mr. Dougherty's thoughts and impressions regarding the charges he faced. And, the Government took action based upon those thoughts," without describing either the defendant's thoughts and impressions (which are not confidential trial strategy), or the alleged unlawful actions that the government supposedly took based on them.

In this case, the government neither attempted to nor obtained information pertaining to Dougherty's defense strategy.  The meetings that were recorded by the CI were usually attended by at least 30 people, most, if not all of whom were union employees.  The purpose of the meetings was never to discuss Dougherty's defense strategy.  None of the statements he

made to this group were privileged as to him.  And none of these statements disclosed his
defense strategy.

In support of his argument, the defense cites *United States v. Levy*, 577 F.2d 200 (3d
Cir. 1978), and *United States v. Danielson*, 325 F.3d 1054 (9th Cir. 2003), as amended (May
19, 2003).  The conduct as issue in those cases is not even remotely related to what took place
here.  In *Levy*, a DEA informant deliberately elicited information about the case from a
codefendant, including defense strategy, which was passed on to the prosecutor. *United States
v. Levy*, 577 F.2d at 204–05.  In *Danielson*, the informant deliberately elicited information of
the defendant's plan to testify in his own defense and of his trial strategy.  The court held that
"government actions that deliberately elicit incriminating statements from an indicted
defendant in the absence of counsel are improper under the Sixth Amendment."  *United States
v. Danielson*, 325 F.3d at 1067, 1068 ("it is clear that Sava was not merely a passive listener in
his conversations with Danielson. Rather, he asked direct questions designed to elicit trial
strategy").

The facts of *Levy* and *Danielson* are not what happened here.  The defendant was
recorded talking to large groups of union employees and members about union business.  The
CI did not elicit any statements from Dougherty.  No privileged information was provided to
the government.  No defense strategy was provided to the government.  The CI made the first
four recordings without the knowledge of the government, because the CI believed that
Dougherty was attempting to threaten and intimidate Local 98 employees and members who
had spoken to the government.  As a result, the government opened an investigation in 2020
that was independent of the charges contained in the 2019 indictment (which were committed
in 2015 and 2016). As noted by the court in *Danielson*, the use of an informant to obtain a

- 6 -

defendant's statements regarding separate offenses for which he had not been indicted is not impermissible and does not violate the defendant's Sixth Amendment rights. *United States v. Danielson*, 325 F.3d at 1066.

The defendant offhandedly claims, without any support, that the Indictment should be dismissed.  He has failed to make any showing, however, that the government deliberately intruded into his attorney-client relationship to gain access to confidential defense strategy. *United States v. Voigt*, 89 F.3d 1050, 1071 (3d Cir. 1996) (dismissal not warranted where the government took steps to avoid procuring defense strategy). The opposite is in fact true. The government went to great lengths to avoid obtaining confidential information by utilizing a filter team. Where, as here, the government intentionally avoids learning of any possible confidential defense strategy, dismissal is not warranted. *Id.* at 1071. Even had the government obtained defense strategy inadvertently, which is not the case here, dismissal would be unwarranted. *United States v. Ofshe*, 817 F.2d 1508 (11th Cir. 1987) (no dismissal warranted where inadvertently intercepted defense strategy not used against the defendant).

## V.    The Government Voluntarily Provided to the Defense More Information Than Required by Law.

To date, the government has provided the defense with much more information than it is entitled under the law.  The defendant now claims that this information demonstrates that he is entitled to even more information. He is wrong.

On March 9, 2022, approximately two months before the May 9, 2022, trial date, the government provided the defense with the entire recording of the August 24, 2020, meeting, as well a transcript of the six-minute excerpt the government intends to play at trial.

On May 25, 2022, the government provided defense counsel with transcripts of audio recordings of the following Local 98 meetings, at which defendant John Dougherty did all or

most of the talking.  These were not conversations with the CI; these were mostly speeches given to approximately thirty Local 98 employees and contractors.

1.   2019-9-28 In Person Meeting
2.   2019-10-5 In Person Meeting
3.   2019-10-18 In Person Meeting
4.   2019-11-2 In Person Meeting
5.   2020-7-9 Teleconference Meeting
6.   2020-7-14 In Person Meeting
7.   2020-7-30 Teleconference Meeting
8.   2020-8-6  In Person Meeting
9.   2020-9-3 Teleconference Meeting
10.  2020-9-15 Teleconference Meeting
11.  2020-10-17 Teleconference Meeting
12.  2020-10-21 Teleconference Meeting
13.  2020-10-29 Teleconference Meeting
14.  2020-11-2 Teleconference Meeting
15.  2020-11-15 Teleconference Meeting
16.  2021-1-9 Teleconference Meeting
17.  2021-02-23 Teleconference Meeting
18.  2021-3-30 Teleconference Meeting
19.  2021-4-26  In Person Meeting
20.  2021-5-6 Teleconference Meeting
21.  2021-6-11 Video Conference Meeting
22.  2021-6-18 Video Conference Meeting
23.  2021-7-25 Video Conference Meeting
24.  2021-7-27 In Person Meeting
25.  2021-9-01 Teleconference Meeting
26.  2021-9-10 Teleconference Meeting
27.  2021-9-26 Video Conference Meeting
28.  2021-9-30 Teleconference Meeting
29.  2021-10-8 Video Meeting
30.  2021-11-23 Union Meeting

On June 10, 2022, the government provided defense counsel with a transcript of the entire recording of the August 24, 2020, meeting.  The entire recording had not previously been transcribed; this was done at the request of defense counsel.

On June 16, 2022, the government provided defense counsel with transcripts of the filter team redactions.  No agent or attorney involved in the prosecution has ever heard the audio or seen the transcripts of these passages.

On June 17, 2021, the government provided defense counsel with descriptions of three Local 98 meetings provided by the CI. These meetings, which took place on June 6, 2021, July 15, 2021, and August 25, 2021, were not recorded. The three descriptions were a total of two pages long.

## VI.   There is No Evidence that the Government Improperly Withheld Evidence from the Defendant.

The defendant now makes the unsupported and reckless claim that the government has improperly withheld evidence from him, in violation of its discovery obligations, and, for this reason, he is entitled to additional information, because the government cannot be trusted in light of its past conduct. Because this argument, like the prior one, is based on allegations that have no basis in law or fact, his request should be denied.

The government has met its discovery obligations for this case. The entire August 24, 2020, recording, a small portion of which is relevant to the case, was turned over approximately two months before trial. The government intends to introduce into evidence a clip this recording, which is of a telephone conference involving Dougherty, Local 98 business agents, and other Local 98 employees. During the call, Dougherty made the following statements about the assault by his nephew, Greg Fiocca, that had been committed five days earlier:

> The Casino, five hundred Building Trades members, there is a second shift, job's running well . . . You know you guys have heard that, you know we had a minor issue down there. And just so you know. It had nothing to do about the last name of the person who was involved. It had everything to do with the position . . .
>    Ok so we had an incident at the Casino. And for those who don't know the story, and I heard a couple comments, which I ain't exactly thrilled with . . . And [the electrical contractor who is the victim in this case] was getting tired of paying Greg Fiocca. So, I told him with all them things on his plate . . . I'm shocked that he paid attention to a steward.

> . . . So, when they dock the steward, not Greg, okay, and they
> made all kind of off-the-wall statement, okay, it had nothing to do with
> Greg it had everything to do with the steward.   So, when the steward had
> a little physical confrontation, allegedly with the superintendent, we
> weren't down there to make kumbaya.  F*** kumbaya.  F*** you want
> kumbaya become a f***ing Superintendent.  You're a f***ing business
> agents representing the stewards.  Who we appoint.  Right wrong or
> indifferent.  Okay?

Dougherty's misleading statements were clearly intended, among other things, to discourage anyone from challenging, or even questioning his decision to allow Fiocca to remain on the job site, even though Fiocca had assaulted the project manager.

The defendant claims that the following statements made by Dougherty at the events identified below are relevant to the extortion trial:

1)      October 16, 2020, meeting:

> I send Jimmy Foy something about maintenance twice in the last six
> weeks because there was a meeting last week, a private off-the-record
> meeting with the Laborer's Union about wall-to-wall representation at the
> casino, except for what we want. (Tr. Oct. 16, 2020 at 5–6).

According to the defense, this statement "is evidence of a legitimate labor dispute on the worksite at issue," and "goes directly to Mr. Dougherty's defense pursuant to *United States v. Enmons*, 410 U.S. 396 (1973) (holding that "the [Hobbs Act] does not apply to the use of force to achieve legitimate labor ends.").

2)      October 29, 2020, meeting:

> Dougherty discusses issues that the Union has faced on the Live! Casino
> worksite. He not only references sending the Casino a letter, but also
> Local 98's strategy with regard to obtaining additional jobs at that site.
> (Tr. Oct. 29, 2020 at 6).

According to the defendant, "this is directly relevant to whether Mr. Dougherty's actions are subject to prosecution, or outside of the ambit of the Hobbs Act pursuant to

- 10 -

*Enmons*. Further, Mr. Dougherty references subpoenas being issued to Mr. Palmieri, the owner of the electrical contractor that he allegedly extorted in this case."

3)      September 26, 2021, meeting:

"Dougherty references the "situation[] like I bumped into down at Live Casino." (Tr. Sept. 26, 2021 Mtg. at 3).

The defendant then baselessly asserts that these three recordings were "improperly withheld from production" and that this demonstrates a "clear violation of the Government's discovery obligations."  He is wrong.

First, none of these statements are relevant to the assault on August 19, 2020, which was committed before any of these statements were made.

Second, the defendant cannot elicit or admit his own prior statements, because they are hearsay; if offered by the defendant, they are not admissions of a party opponent.  The defendant cannot present any allegedly exculpatory statement he made by playing recorded conversations, by questioning witnesses called by the government on cross-examination, or by any means other than through his own testimony. *See United States v. Kapp*, 781 F.2d 1008 (3d Cir. 1986) (affirming district court's ruling that tape recording of a conversation between a codefendant and government informant that defendant considered exculpatory on the issue of his knowledge of illegality was inadmissible because it was not offered "against a party" as required by Rule 801(d)(2)).  *See also United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005) (emphasis in original) ("Rule 802(d)(2) [ ... ] does not extend to a party's attempt to introduce his or her own statements through the testimony of other witnesses" . . . to hold otherwise would allow defendant to do "an end run around the adversarial process by, in effect, testifying without swearing an oath, facing cross examination, or being subjected to first hand scrutiny by the jury").

Third, evidence that Dougherty may have acted legally on other occasions, even on the same jobsite, is not admissible.  A defendant is not permitted to introduce evidence of his or her own good behavior, or even behavior that is not criminal in nature, on other occasions to demonstrate a lack of criminal intent during the commission of the charged crime.  Evidence of good conduct is not relevant to negate criminal intent and is merely an improper attempt to portray a defendant as a person of good character through the introduction of prior "good acts." *See United States v. Ellisor*, 522 F.3d 1255, 1267 (11th Cir. 2008) (evidence of defendant's allegedly legitimate business activities was inadmissible in his mail fraud prosecution because it did not bear on his intent to defraud with respect to the act in question); *United States v. Marrero*, 904 F.2d 251, 260 (5th Cir. 1990) ("The fact that Marrero did not overcharge in every instance in which she had an opportunity to do so is not relevant to whether she, in fact, overcharged as alleged in the indictment.").

Fourth, and finally, even if these statements are somehow discoverable, the defendant has had them since May 25, 2022, more than a month before trial.

The defendant also argues that a statement union employee Jim Foy made at an August 6, 2020, meeting, which took place approximately two weeks before the assault, was somehow discoverable.  Foy stated:

> I wasn't sure If John was coming or not honestly. He made his way down here, but he wants to make sure all jobs all overtime is cleared by him, right whether we have full employment or not.
> Umm he wants everything done through him, he, he's been clearing it, but he also wants to know about it. So make sure everybody knows that . . . .(Tr. Aug. 6, 2020 at 8).

According to the defendant, "these statements are not only relevant under the Rule 16 standard, but they are also covered by *Brady*; they rebut the Government's assertion that it was only after the fight that Mr. Dougherty became involved in overtime determinations on job

sites . . . given that Mr. Foy has been listed as a Government witness, *Giglio* and *Jencks* further mandate that this transcript should have been produced."

First, the government has never alleged that it was only after the fight that Dougherty became involved in overtime determinations on job sites. The Indictment alleged that he threatened the contractor with not approving overtime if they continued to monitor the performance of codefendant Gregory Fiocca. *See* Indictment No. 21-65, Count One, Overt Act Seven (". . . after the assault, defendant JOHN DOUGHERTY made the following threats of economic harm against R. P.: a) defendant DOUGHERTY would no longer allow the Local 98 electricians working for the contractor to work overtime").

Second, this statement does not apply to the Live!Casino job.  Foy's statement "[h]e made his way down here" is referring to the meeting at the union hall, which Dougherty was not expected to attend.

Third, the standard practice of Local 98 is that the Business Manager is involved in the approval of overtime, as set forth in the Local 98 Collective Bargaining agreement, to which all union contractors, including the victim here, are parties. CBA, Section 402(f) ("Overtime will be allowed to be worked for tie-ins, cut-overs, emergency shutdowns, and repairs when specifically called for by the project documents and the Business Manager will be notified of such overtime.  All other overtime must be cleared by the Business Manager").

Finally, to the extent that this statement has any independent relevance to the extortion case, it was voluntarily produced to the defense more than a month before trial.

**VII.   The Defendant is Not Entitled to All of the Underlying Audio Recordings.**

The defense also claims that it needs to have the underlying recordings on which the transcripts were based because certain portions of the transcripts were noted as "unintelligible"

in the transcripts. These unintelligible portions usually involve one or two words. The defendant has failed to identify any particular "unintelligible" moments that he believes would provide relevant, much less material, information. Because the defendant has failed to establish how any of the 31 transcripts that he was provided support his claims, his request for the recordings themselves should be rejected. This request appears to be an attempt to delay his upcoming extortion trial. (On September 30, 2021, four days before his first trial, which was scheduled for October 4, 2021, he filed a motion to continue.)

## VIII. Conclusion

The defendant has failed to demonstrate any legitimate reason he is entitled to the Source Reports which are currently in the possession of the Court, or why the Court is not competent to make any necessary findings pertaining to the Source Reports. Similarly, he has failed to demonstrate why the prior production of the transcripts of the recorded business meetings is inadequate or hampers his defense. For these reasons, the defendant's motion should be denied.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney

MICHELLE MORGAN
Assistant United States Attorney
Chief, Corruption and Labor Racketeering
Section

/s/ Frank R. Costello, Jr.
FRANK R. COSTELLO, JR.
JASON GRENELL
Assistant United States Attorneys

Dated: 6/21/22

- 14 -

## <u>CERTIFICATE OF</u>
## <u>SERVICE</u>

I HEREBY CERTIFY that on this date, I electronically filed the foregoing response

with the Clerk of the Court using the CM/ECF system, which will send notification of such

filing to the attorneys of record for the defendants, who are identified below.

Henry Hockeimer
Counsel for Defendant John Dougherty

Rocco Cipparone
Counsel for Defendant Gregory Fiocca

/s/ Frank R. Costello, Jr.
FRANK R. COSTELLO, JR.
Assistant United States Attorney

Dated: 6/21/22

1